PEOPLE, PLAINTIFF AND APPELLEE, *v.* PORTO RICAN AMERICAN
TOBACCO CO., DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in a Prosecu-
tion for Violation of the Act Relative to Labor Con-
tracts.

No. 1845.—Decided June 13, 1922.

LABOR CONTRACT—WAGES—DEDUCTION BY EMPLOYER—PLEADING.—As the prohi-
bition contained in section 6 of the Act Relative to Labor Contracts of March
31, 1919, to the effect that no employer shall deduct for any reason part of
the wages earned by laborers to be paid to other persons, except when an
advance has been made in legal tender, is unconditional, it is not necessary
to allege in a complaint under section 6 of that act that the deduction was
made against the laborer's will; but it is sufficient to show a deduction with-
out a previous advance in legal tender to establish the commission of the
offense defined in said section 6.

The facts are stated in the opinion.
*Mr. L. Muñoz Morales* for the appellant.
*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of
the court.

The pertinent part of the information which originated
this prosecution reads as follows:

"The district attorney charges the corporation Porto Rican
American Tobacco Company with the crime defined by section 6 and
penalized by section 8 of the Act entitled 'An Act Relative to Labor
Contracts' enacted by the Legislature of Porto Rico on March 31,
1919, a misdemeanor committed in the following manner:

"That on one of the days of the month of December, 1919, in San
Juan, which forms a part of the judicial district of the same name,
the defendant corporation, Porto Rican American Tobacco Company,
employed the services of Agustina Corchado by the week and, without
having made any advance to her, discounted the sum of twenty-five
cents from the weekly wages earned by her, to be paid to other
persons."

After a trial the court found the defendant guilty and
sentenced it to pay a fine of $100, from which judgment the
present appeal was taken. We will consider the alleged errors
in the order in which they have been assigned.

1. The appellant contends that the information does not allege facts sufficient to establish the charge. In the opinion of the appellant it should have been alleged therein that the payment was made against the will of the employee. Let us examine the law. Sections 1 and 6 of the Act, which are applicable to the case, read as follows:

"Section 1.—That in all contracts entered into with laborers their wages shall be paid exclusively in legal tender of the United States, and if by special agreement, through custom or for any other reason, the laborer should receive prior to his regular pay-day any advancement in cash, it shall be lawful for the employer to discount such advance payment. When a labor contract stipulates that all or part of the wages shall be paid otherwise than in cash, the same shall be null so far as relates to the promise or agreement to pay wages otherwise than in legal tender of the United States.

"Section 6.—In cases where the employer or his attorney-in-fact makes an advance to the laborer in legal tender of the United States, he shall have the right to deduct the sum from the wages of the laborer. However, no retention of wages shall exceed the amount advanced. No employer shall deduct for any reason part of the wages earned by laborers, to be paid to other persons, except as provided in this section."

It clearly appears from the Act that its principal purpose was to secure the wages of the laborer by preventing any combination whereby they might be diminished, and to that end section one thereof provides that the said wages shall be paid exclusively in legal tender and that only advances made *in cash* can be discounted, any stipulation that may be made as to payment in any other manner except in money to be void.

In section 6 the Legislature again refers to the question of advances made *to the laborer* and positively prescribes that "No employer shall deduct *for any reason* part of the wages earned by laborers, *to be paid to other persons,* except as provided in this section." The prohibition is absolute. A deduction can be made only when an advance has been made to the laborer. If a deduction is made in any other

manner or for any other reason, it is a violation of the law which is penalized as a misdemeanor by section 8 of the Act. The wages must be paid to the laborer and the advances, if any, liquidated with him. No deduction can be made to be paid to other persons, however good the motives may be therefor.

This being so, it was not necessary to allege in the information that the deduction had been made against the will of the worker. It was made against the provisions of the Act and this, which is all that was necessary, was clearly alleged in the information by a statement of the facts.

2. The other errors assigned are as follows: (*a*) In ignoring the fact that the deduction was made with the consent of the employee. (*b*) In ignoring the fact that the deductions made were not to be paid to other persons, but were for the benefit of the laborers. (*c*) In not recognizing the existence of the labor organizations in the factories of the defendant corporation. (*d*) In ignoring the fact that the committees appointed by the workmen had authority to agree upon the deductions. (*e*) In weighing the evidence as a whole and making certain statements which disclose partiality or prejudice.

Let us review the evidence. Agustina Corchado, the employee to whom the information refers, testified that she worked as a stripper in the cigar factory of the defendant for the sum of $9 a week; that she took no money in advance and notwithstanding that fact a deduction of fifty cents was made every week from her wages; that she had not authorized the deduction in any manner and that she made a protest in the office where she was told that there was an order from a labor union to deduct from each employee in the factory forty-five or fifty cents; that the labor committees stated that the money deducted was for a cooperative society, for some widow, etc.; that the amounts deducted were paid to the representatives of the committees; that the committees

were appointed by a majority of the laborers in each room and the others had to accept the action of the majority.

Augusto de Chabert, a witness for the defendant, testified that he was the pay-clerk in defendant's factory and admitted that the deductions were made in the following manner:

"That the committee of the factory would come and tell the strippers the reason why they thought a deduction should be made and after they had explained the matter it was put to a vote, by raising the hand or standing, and if there was a majority in favor of the deduction, it was made and they themselves authorized the committee of the factory to go to the office and state what deduction should be made that week and for what purpose and then the head of the office or the manager of the department informed him (the witness) about it and he would then ask the employees whether or not they should make the deduction; therefore this deduction was made by an agreement of the assembly of the workmen themselves; that some of them said that they did not consent to the deduction, but when they said that to him he told them to make their complaints in the office, because he went to the factory only to pay and not to hear complaints; that the office was authorized to receive complaints."

The witness testified at length and on examination by the district attorney he expressed himself in part as follows:

"That on the day Agustina Corchado went away, when there was a tumult in the factory, she protested in the factory, but not to him; that he told her that the money was paid already and he could not return it; that if they protested before payment was made the committee was informed about it and then if the committee authorized it, the money was returned, so that there was a previous understanding between the committee and the strippers and they would abide by the decision of the committee."

On examination by the court finally he testified in part as follows:

"That the strippers made the claim and then they called the committee to inform them that the money was going to be returned if they consented before payment was made, so that if the committee objected to the return of the money, the company would not return it because the deduction had already been authorized in the factory;

that with regard to the deductions, the committee controlled, because after the deduction had been made it was considered that it belonged to the committee, inasmuch as before the pay-roll had been made the factory laborers had' authorized it."

The defendant introduced in evidence four receipts, the first of which we will insert here.  The others are similar. It reads as follows:

"Received from the Porto Rican American Tobacco Co. of P. R. Gen. Stemmery Dept. the sum of $89.90 deducted from the wages of the laborers during the week of December 12 to December 18, 1919, for cooperative purposes of the Free Federation, as follows:

| | | |
|---|---|---|
| "115 laborers | @ 25 cents each_____ | $28. 65 |
| 1 reader | @ 25 cents    _____ | . 25 |
| 36 *capoteras* and workmen | @ 10 cents each_____ | 4. 60 |
| 563 strippers | @ 25 cents each_____ | 36. 30" |
| | Total_____ | $89. 90" |

Prudencio Rivera Martínez, organizer of the International Union of Cigar-makers, testified in part as follows:

"The shops had a democratic organization.  The committees governed and when there came a widow or an agent of the Red Cross or any petition the matter was submitted to them and if the majority accepted it the head officials of the Company were informed so that the money would be contributed.  Sometimes a cigar-maker without means dies and a laborer of the factory will stand up and propose the deduction of a certain sum; they speak to the manager and inform him about it, he makes the advance and then it is deducted from the pay envelopes; so that these deductions were made by virtue of the said agreements."

While this witness was testifying the defendant offered in evidence the 7th clause of certain regulations approved in 1917 and the witness said that they were in force at the time of the occurrence of the facts involved in this case.  That clause reads as follows:

"The general office shall deduct weekly from the wages of each cigar-maker who earns more than $2.50 a week the sum of 15 cents

agreed to by them for the support of the sick among them, and this sum shall be delivered by the treasurer of the company to the manager of the factory, who in turn shall pay it to the person or persons whom the cigar-makers may designate."

Finally Florentino Miranda and Arthur H. Noble testified. Both referred to the regulations of the workmen. Noble testified in part as follows:

"That in his position he has knowledge of certain deductions which have been made from the wages of the workmen, and that these deductions were made in all of the factories throughout the Island by virtue of agreements between the labor organizations and the company; that these agreements were in force in 1919 and continued in force until the end of 1920; that at present they are not in force because the workmen at present employed are not union men; that at that time there were unions in the factories; that they always dealt with the committees designated by each factory and never personally with any of the workmen, not since 1914, for at that time it seems that they were not organized; that they had these organizations, but they were not working perfectly; that the company had knowledge of these organizations because of certain strikes and the committees who represented the workmen took part therein; that these deductions were made from the wages of all of the workmen without distinction."

What we have quoted from the evidence is the essential part of it, in our opinion, and it brings out clearly the truth of what occurred. There is no doubt that at the time of the occurrence of the facts which gave origin to this prosecution the labor unions included almost all of the workmen of the factory, but there is nothing in the evidence to show that Agustina Corchado was a member of any union. She denied that she was. She testified that she never authorized any deduction and that she protested against the deduction made.

For cases like hers and other similar cases the Act that the defendant corporation has violated was enacted. Each workman is the owner of and should receive all that he earns, without being subject to outside pressure which may compel

him to relinquish a part of his wages involuntarily, and in order to accomplish this purpose and enforce the spirit of the law, the prohibition imposed therein had to be, as it was, general and absolute. The payment of wages should be made to the workman, liquidating with him the deduction of what may have been advanced to him in cash. If the workman of his own will, after a reflective study of the good that he might derive from it, or of the benefits that it might bring to his fellows workers, desires to set aside a part of the product of his labor and place it in the hands of a certain person, association or union, there is no power to prevent him from doing so. But he should do it personally. Such is the present import of our laws on the matter.

What we have said disposes of the first four errors assigned under number 2. Now we have only the last one to consider. In rendering its judgment the court said:

"By virtue of this evidence the court rendered judgment finding the company guilty of the crime charged and imposing upon it a fine of $100 for each case, stating that it had been benevolent in these cases, but that if the district attorney should bring another case of this kind after a judgment had been rendered, it would impose the maximum sentence of imprisonment allowed by the law. The defendant entered its protest against this statement by the court on the ground that it implies a forecast of any case that may be submitted to it."

We think that the statement of the court is not an error. It was indeed, exaggerated, but perhaps it finally benefitted the defendant and promoted compliance with the law. At all events, it referred to future actions which for the present are beyond our jurisdiction.

The judgment appealed from must be

*Affirmed.*

Justices Wolf, Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.